UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| OMAR GRIFFIN, et al., | ) No.: 4:18-CR-147-LGW-JEG |
| | ) |
| DEFENDANTS. | ) |

**DEFENDANT HOOPER'S MOTION TO SUPPRESS
THE SEARCH OF HIS RESIDENCE**

COMES NOW Defendant VINCENT HOOPER ("Mr. Hooper" or "Defendant") through undersigned counsel, and files this Motion to Suppress the warrantless search of his residence on or about March 7, 2018 and to conduct a hearing to determine the voluntariness of the alleged consent given to conduct that search. In support of this Motion, Defendant submits the following:

**I.    PROCEDURAL HISTORY**

On June 6, 2018, Mr. Hooper, along with 13 others, was indicted and charged in a single count of conspiracy to possess with intent to distribute and distribution of controlled substances in violation of 21 U.S.C. § 846. Doc. 1. On June 27, 2018, Mr. Hooper was arraigned and entered a plea of not guilty. Doc. 104. On August 8. 2018, a superseding indictment was returned again charging Mr. Hooper in the conspiracy count, along with a single count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), a single count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), and a single count of possession

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 1 of 9

of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Doc. 187-1.

## II. STATEMENT OF FACTS[1]

On March 7, 2018, after obtaining a warrant for the arrest of co-defendant Barrington Miller, Chatham Narcotics Taskforce and SWAT officers followed Miller to Mr. Hooper's house on Palm Avenue where they planned to arrest Miller. *See* "180307_0002.mp3" (Interview of Vincent Hooper by Plumley, et al.). Barrington Miller arrived at Mr. Hooper's house shortly after 8:00 p.m. *Id.*[2] Initially, the officers who arrived on-scene drew their weapons and surrounded the wrong house. *See* "8 Palm Ave-3.mp4" (body-worn camera) at 01:55. Upon realizing their mistake, officers withdrew from the neighbor's house and approached 8 Palm Avenue, where they demanded that Barrington Miller exit the house and surrender. *Id.* at 2:55.

Within seconds of the announcement by law enforcement, Barrington Miller exited through the front door and was secured in the front yard. *Id.* at 3:05. Several other occupants of the house also filed out into the front yard. *Id.* From the body-worn camera footage, it is clear that several armed officers then entered the house and performed a protective sweep. *See id.* Body-worn camera footage and post-incident reporting also reveal more than a half-dozen officers, multiple K-9 units, bright lights,

---

[1] Pursuant to LCrR 12.1, the following facts are drawn from evidence produced by the government in discovery.
[2] The government's evidence is inconsistent regarding the time of arrival on Palm Ave. Cf. Ex. A – Savannah Police Department Officer Supplemental report by Officer Ferrero (indicating arrival on-scene at "19:00") and Ex. B – report by Officer Garcia *with* Ex. C – Plumley Memorandum of Interview (no time given) and audio recording of interview (referring to Miller's arrival "around 8 o'clock").

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 2 of 9

and "lethal cover" including snipers were involved in the execution of the warrant. These units acted swiftly and within minutes of arriving on scene, the SWAT and CNT officers had detained and secured the suspect (without need to enter the house) and performed a protective sweep of the house. *See* "8 Palm Ave-3.mp4" at 3:10.

It is unclear, however, from the government's evidence, what happened inside the house during the next nine or more minutes. Once officers with activated body-worn cameras enter the house, other officers had already begun searching and cataloging the contents of a safe located in a back bedroom. *See e.g.* "8 Palm Ave-2.mp4" at 00:17. Undersigned counsel has been unable to locate within the evidence produced by the government, including numerous reports and memoranda, any indication that Mr. Hooper was asked to unlock the safe, after having been advised that he was under no obligation to consent to a search of an otherwise locked safe.[3] It is during this dark period (where no body-worn camera footage exists, nor audio recording, both of which were readily available to officers on-scene) that, according to Plumley's Memorandum "Hooper was advised that he was not under arrest and did not have answer (sic) any questions." Ex. C.[4]

Once officers gained access to the safe, they discovered numerous weapons and 18.3 pounds of marijuana belonging to Barrington Miller. *See* "180307_0002.mp3"

---

[3] The government has produced a "Consent Search" purportedly signed by Mr. Hooper "consent[ing] to a search of my house…," Ex. D, but other than a time entry of 20:45 on the form, the government has provided little if any evidence of the circumstances under which Mr. Hooper signed the form. Even on the most generous reading of the government's evidence, the form was not signed until after the house had been searched, and Mr. Hooper had been coerced into opening the safe.
[4] Conspicuously absent from Plumley's Memorandum is any mention of the "Consent" form or any indication that Mr. Hooper consented to the search of his house.

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 3 of 9

(Interview of Vincent Hooper by Plumley, et al.). *See also* "171129114  _CASE FILE.pdf" (Chatham-Savannah CNT Incident Property Listing) at 40, 64-68 (listing Barrington Miller as owner) (filed under seal). Next, Inspector Plumley conducted an audio-recorded interview of Mr. Hooper at the dining room table, while other officers continued to search Mr. Hooper's house. *See e.g.* Interview at 8:07 ("you hear the dog coming in the door right now"). Unsurprisingly, the K-9 unit alerted to several pounds of marijuana lying on a bed next to the opened safe. *See* "8 Palm Ave-2.mp4" at 00:20.

### III.   ARGUMENT AND CITATION TO AUTHORITY
#### a. Standard of Review

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. An exception to the general rule against warrantless searches exists where the search is made pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

However, when, as here, the government relies on consent to validate a search, it has the burden of proving that the consent was voluntary. *Id.*, 412 U.S. at 222-23. The government must show that, under the totality of the circumstances, the consent was basically *a free and unconstrained choice*; that is, the person's will was not overborne, and his capacity for self-determination was not critically hampered. *United States v. Watson*, 423 U.S. 411, 424 (1976); *see also United States v. Blake*, 888

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 4 of 9

F.2d 795, 798 (11th Cir. 1989) ("The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.").

Several nondispositive factors should guide the Court's inquiry:

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*United States v. Welch*, 683 F.3d 1304, 1308-09 (11th Cir. 2012) (quoting *Blake*, 888 F.2d at 798).

### b. The *Blake* factors weigh in favor of suppression.

In *United States v. Arnold*, this Court considered whether the government's search should be suppressed after defendant gave written consent and invited agents back a second time for another look through his house. *United States v. Arnold*, 2:13-cr-26, at *3-4 (S.D. Ga. Dec. 3, 2013) *report and recommendation adopted*, 2014 WL 46610 (S.D. Ga. 2014). In *Arnold*, the Court found that defendant was advised of his right to consent or to refuse to consent to a search. *Id.* at 3. Defendant was also advised that, if he consented, any items found could be used against him in a criminal trial or another proceeding. *Id.* at *3-4. The Court also found that agents advised Arnold that if he did not consent to a search, no search could be conducted without a warrant. *Id.* at *4.

There, the Court found that there was "no dispute that Arnold gave agents consent to search his house [on two occasions]." *Id.* In reaching this conclusion, the

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 5 of 9

Court relied on a finding that Arnold invited agents to return to his house for a second search and that there was "no evidence whatsoever that agents coerced…his consent." *Id.* at *5.

Here, by contrast, there is no evidence that Mr. Hooper invited the officers into his house for the initial sweep, much less a second trip. Instead, as indicated on the videos, officers stormed into the house with weapons drawn after detaining Barrington Miller in the front yard. Here, there is evidence, as indicated below, that Mr. Hooper was implicitly coerced into opening the safe and signing the "consent search form." Although the officers had at their disposal the tools necessary to collect evidence of Mr. Hooper's knowing and voluntary consent to the search, e.g. video and audio recording equipment, none of those tools were used during the most critical moments of the search.

The Eleventh Circuit's opinion in *United States v. Tovar-Rico* provides the necessary context for the Court's evaluation of the voluntariness of Mr. Hooper's consent here. 61 F.3d 1529, 1536 (11th Cir. 1995) (finding involuntary consent under analogous circumstances and affirming grant of motion to suppress). In *Tovar-Rico*, the magistrate judge found the defendant's consent involuntary despite the existence of a signed written consent form. *Id* at 1536. There, as here, "Tovar had already observed officers explore every room in the apartment and could not reasonably have known that she could still refuse a search." *Id.* In fact, the Eleventh Circuit "entertain[ed] no doubt that Tovar opened the door in response to a 'show of official authority' and cannot be deemed to have consented to the agents' entry or to have

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 6 of 9

voluntarily consented to the search." *Id.* Relying on the Supreme Court's decision in *Florida v. Royner*, the Eleventh Circuit concluded that the government cannot meet its burden of voluntariness by "showing a mere submission to a claim of lawful authority." *Id.* (citing 460 U.S. 491, 497 (1983)).

Recently, another district court applied the *Tovar* reasoning to less severe facts. *United States v. Solano-Mendoza*, 2:18-cr-15 (M.D. Ala. June 29, 2018). In *Solano-Mendoza*, the court concluded that, despite the absence of "explicitly coercive police procedure" where the officers "were polite and not 'pushy,'" the rest of the *Blake* factors led to a conclusion that defendant "was not in a position where a 'reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)).

Here, as in *Solano-Mendoza*, Mr. Hooper had just watched officers "arrest [a friend] and search [his] home, had been directed to sit in [his] living room then summoned to [his bedroom], where three armed adult men waited, and then asked pointed questions." *Id*. There, the court found it objectively reasonable that defendant did not believe she could keep the officers out of her home. *Id*. Because a reasonable person in her shoes "would not have felt free to decline the officers' inquiries" the consent was not voluntary and the search was subject to suppression. *Id*.

### IV.   CONCLUSION

The facts underlying those cases in which defendants have been found to voluntarily and knowingly consent to the search of their home at the request of law enforcement officers, e.g. *Arnold*, are distinguishable. Here, viewing the totality of

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 7 of 9

the circumstances, the government cannot carry its burden of showing that it was objectively reasonable for Mr. Hooper to withhold consent and terminate the search of his house. Because the *Blake* factors weigh against voluntariness, the search of Mr. Hooper's house, including his bedroom and the locked safe, should be suppressed.

WHEREFORE, Mr. Hooper respectfully requests:

a) that the Court hold a hearing to determine the voluntariness of Defendant's consent to the search of his residence on March 7, 2018.

RESPECTFULLY SUBMITTED, this 15th day of October 2018.

/s/ Cameron C. Kuhlman
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorney for Defendant*

DUFFY & FEEMSTER, LLC
P.O. Box 10144
Savannah, Georgia 31412
(912) 236-6311 Telephone
(912) 236-6423 Facsimile
cck@duffyfeemster.com

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 8 of 9

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

Submitted this 15th day of October, 2018.

/s/ Cameron C. Kuhlman
CAMERON C. KUHLMAN
Georgia Bar Number: 596159
*Attorney for Defendant*

United States v. Griffin, et al.
U.S. District Court for the Southern District of Georgia
Page 9 of 9